Arthur Ward v. Commissioner.
Ward v. Commissioner
Docket No. 14709.
United States Tax Court
1948 Tax Ct. Memo LEXIS 137; 7 T.C.M. (CCH) 505; T.C.M. (RIA) 48132; July 14, 1948
*137 Petitioner operated retail liquor stores in South Carolina. Respondent held that petitioner's records were inadequate to verify his returns and determined the income by assuming a profit of 25 per cent for 1942 and 33 1/3 per cent for 1943 and 1944 on cost of goods sold. Held, respondent's determination was erroneous. Thomas A. Wofford, Esq., for the petitioner. Homer F. Benson, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The respondent determined deficiencies in petitioners' income and victory tax for 1943 in the amount of $25,125, and in his income tax for 1944 in the amount of $8,623.09. Finding the petitioner's books inadequate to verify his returns, the respondent determined petitioner's income by arbitrarily assuming *138 that he realized a gross profit of 25 per cent for 1942 and 33 1/3 per cent for 1943 and 1944 on the cost of goods sold, which percentage represented the mark-up permitted by state law. The petitioner alleges that respondent erred in this determination. Findings of Fact Petitioner during 1942, 1943 and 1944 was a resident of Greenville County, South Carolina. He filed income tax returns for such years with the collector of internal revenue at Columbia, South Carolina. During the taxable years petitioner owned and operated a cut-rate retail liquor business in South Carolina, with one store in Anderson and another in Greenville. The Greenville store was located very close to the Negro section of the town and approximately 50 per cent of the trade was with colored people. The stores carried stocks of whiskey, gin, rum, brandy, wine and other alcoholic beverages. Petitioner had no connection with a wholesale liquor dealer. In order to obtain nationally advertised brands from the wholesalers he had to buy four or five cases of off-brand merchandise for each case of merchandise that he wanted. Petitioner did not take the full mark-up on his better grade merchandise, and was unable *139 to secure the mark-up allowed by the State for off-brand merchandise. Petitioner's mark-up on his cheap wines was 15 per cent. The mark-up was computed after deducting the Federal excise tax. Petitioner's business records consisted of invoices, bank statements, canceled checks, check stubs and a small black pocket-sized notebook. In this notebook petitioner had entered weekly amounts representing the daily sales totals from the cash registers and the weekly purchases and expenses. The sales of the Greenville store and the Anderson store were entered separately and then totaled. Petitioner inventoried his merchandise on the last day of each year for purpose of the State floor stocks tax, but retained no copies thereof as a part of his permanent records. At the end of each taxable year petitioner totaled his weekly sales, expenses and purchases and submitted the resulting figures to his attorney for use in preparing his income tax return. The returns were based upon these figures. Petitioner used this method of accounting and reporting income since the inception of the business in 1935. In June 1945 a revenue agent called upon petitioner to verify the income reported on his returns *140 for 1942, 1943 and 1944. The agent asked petitioner for all his books and records pertaining to his income tax returns for such years. All available books and records were furnished the agent, among which was the book in which the cost of liquor purchased and amounts received from sales of liquor, taken from the cash register tickets, were entered. Upon examining these books and records the agent concluded that they were inadequate. He informed the petitioner that he was going to set up his business on a percentage basis. The agent did not try to set up petitioner's business on a net worth basis. Petitioner began working for the Office of Price Administration as a textile inspector in 1944. His son then took over the operation of the stores for his father. The son put some of the records in pasteboard boxes in the back room of the store building and a man, to whom the son had given permission to store some furniture, in cleaning out the room for such purpose, threw some of the boxes away. In the deficiency letter respondent computed petitioner's taxable net income for the years 1942, 1943 and 1944 in the respective amounts of $41,466.68, $51,637.68 and $29,605.49. The several computations *141 in the deficiency notice determining the taxable net income are set forth in the following table: 1942
1943
1944
Gross income reported by petitioner
$ 22,261.73
$ 29,275.36
$ 20,257.13
Net income reported by petitioner
9,385.47
20,282.10
14,365.04
Difference
$ 12,876.26
$ 8,993.26
$ 5,892.09
Inventory, Jan. 1st
16,566.25
11,593.40
11,198.92
Purchases
212,398.93
181,516.52
125,228.22
Total
$228,965.18
$193,109.92
$136,427.14
Less - Inventory, Dec. 31st
11,593.40
11,198.92
29,923.74
Cost of goods sold
$217,371.78
$181,911.00
$106,503.40
Gross income was held to be 25 per cent of 1942 and 33 1/3 per cent
of 1943 and 1944 cost of goods sold
54,342.94
60,630.94
35,497.58
Less difference between gross and net income as reported by
petitioner on his returns
12,876.26
8,993.26
5,892.09
Respondent's taxable net income
$ 41,466.68
$ 51,637.68
$ 29,605.49
Net income per petitioner's returns
9,385.47
20,283.10
14,365.04
Increase in taxable net income as determined by respondent
$ 32,081.21
$ 31,355.58
$ 15,240.45
The respondent erred in arbitrarily determining that petitioner made a gross profit of 25 per cent for *142 1942 and 33 1/3 per cent for 1943 and 1944 on the cost of goods sold. Opinion The respondent examined petitioner's records to verify the taxable income reported on his returns for 1942, 1943 and 1944. The records made available to the respondent's agent were invoices, bank statements, check stubs and a notebook containing entries of sales entered weekly from the cash registers of the petitioner's stores. The respondent determined that these records were inadequate. He determined petitioner's gross income by using the mark-up allowed liquor dealers by the State of South Carolina, namely, 25 per cent in 1942 and 33 1/3 per cent in 1943 and 1944, as the measure of profit realized on the cost of goods sold. From this gross profit he determined net income apparently by accepting the deductions reported on the returns. The petitioner argues that the respondent's computation is based on false assumptions and is arbitrary and excessive. The evidence shows that he was unable to sell the liquor at the mark-up permitted by the State; that in buying from wholesalers he was required to take four or five cases of off-brand merchandise in order to get one case of standard-grade merchandise; *143 that the less desired liquors were hard to sell and could not be sold at the mark-up allowed by the State and sometimes could be sold only at a loss. He testified that he did not sell at the highest permissible mark-up because he operated a cut-rate store, and said also that his maximum mark-up on wines was not over 15 per cent. The petitioner also pointed out that since the Federal excise taxes were paid before the liquor reached him, the "cost of goods sold" figures used by respondent included excise taxes. The agent admitted at the hearing that at the time of the investigation he knew nothing about the excise taxes and it is evident that he did not consider them. The evidence shows that in fixing the retail price, the percentage of mark-up must be applied by the retailer to the net cost after deducting excise taxes, and the taxes then added back to the retail price thus reached. The petitioner testified further that he took inventory at the end of each year for the purpose of the State floor tax and that such inventory was filed with the State. The facts show that petitioner has used the same method of accounting since 1935. His bookkeeping was simple and he had no need of an *144 intricate system. The daily sales were recorded on the cash register and the total sales thus shown for the week were entered on one side of a notebook. On the opposite side he entered the checks issued to pay for liquor and the expenses for the same week. Each year he totaled his gross sales, purchases and expenses, as recorded in this notebook. These figures were furnished to his attorney and were used in preparing his income tax returns. The petitioner's evidence shows that he could not have realized the profit assumed by the respondent as the basis of the deficiencies determined. Although the records may have been inadequate for the verification of the returns, this fact does not authorize the respondent to determine the income upon a basis which is plainly not consistent with the surrounding circumstances. The determination was without rational foundation and was excessive. As such it will not be enforced. . It is not clear from the record whether petitioner made use of opening and closing inventories in computing his tax liability. He should have done so. Regulations 111, section 29.22 (c)-1. Respondent's notice of deficiency *145 used opening and closing inventories and determined the cost of goods sold in the proper manner. If petitioner's computation was incorrect, it may be corrected under Rule 50. Decision will be entered under Rule 50.