A. D. Miller and Agnes I. Miller, his wife v. Commissioner.
Miller v. Commissioner
Docket No. 23754.
United States Tax Court
1951 Tax Ct. Memo LEXIS 350; 10 T.C.M. (CCH) 33; T.C.M. (RIA) 51018; January 18, 1951
A. D. Miller, for the petitioners. W. E. Koken, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency in petitioners' income tax liability in the amount of $1,702.72 for the calendar year 1945, plus a delinquency penalty of 25 per cent in the amount of $425.68, for failure to file a proper return, claim for which was made by amended answer pursuant to leave of the Court granted at the hearing. The issues presented for determination in this proceeding are: (1) Did respondent err in disregarding the books and records of the Denny Station Tavern and in computing petitioners' total sales for 1945 upon the basis of a gross profit mark-up of 40 per cent? (2) Were *351 business expenses in the amounts of $743 for interest paid, $103.50 paid for a Christmas party, and $5 for charitable contributions properly disallowed? (3) Was a penalty of 25 per cent validly assessed for failure of petitioners to file a proper return? Findings of Fact Petitioners are husband and wife residing at 8904 Aurora Avenue, Seattle, Washington. Their joint income tax return for the calendar year 1945 was filed with the collector of internal revenue for the district of Washington. During 1945 petitioners owned and operated a tavern known as the "Denny Station Tavern" located at 7913 West Greenlake Way, Seattle, Washington, which they had acquired in 1943 in partnership with one Griffiths for $3,500. This sum was borrowed from the American Discount Corporation, Seattle. In 1944 petitioners borrowed an additional amount of $3,000 to purchase Griffiths' interest. On January 15, 1945, the balance due was $2,724. At this time $3,000 additional was borrowed and the notes were combined, making the face value of the note $5,724 to which was added finance charges of $1,026, making a total balance due of $6,750. During 1945 petitioners made total payments on the loan of $3,672. *352 Petitioners, on their return for 1945, took a deduction for interest paid on the loan in the amount of $1,266. No interest rate was specified and nothing is shown as to how this figure was arrived at. Respondent's agent determined by computation and from the books of the American Discount Corporation that interest was paid in the amount of $523, the remainder being charges other than interest. Each year at Christmas time, beginning in 1944, it was the custom of petitioners to sponsor an outdoor party for the children of the neighborhood. Petitioners believed this had a tendency to increase good will within the neighborhood from which their trade was attracted. The cost of the party, $103.50, was included with other business expenses on petitioners' return in the computation of adjusted gross income. Another amount of $5 which was a contribution to the "War Chest" was included as a business expense. This contribution was for charitable purposes. Petitioners computed their tax by means of the tax table which automatically allows a deduction for charitable contributions. In the operation of petitioners' business the products offered for sale were primarily beer, wine and cigarettes. *353 The tavern was open for business between the hours of 11:00 A.M. and 12:00 midnight, six days a week. Petitioners operated the tavern themselves except for occasional relief help for which about $25 per month was expended. Equipment used to dispense the beer was old and in bad repair resulting in the loss of beer. This condition existed during the taxable year as well as in prior and subsequent years until replaced in 1947. Beer was at times difficult to get and occasionally as much as a keg would not be salable because of its quality. No refund was obtained. An additional source of income, the amount of which was not specified, was received from punch boards, which were handled in 1944, but due to the difficulty of checking them, were taken out in 1945 and were later put in use again in 1946. In the early part of 1945 petitioners, by an OPA order, were directed to sell beer at nine cents per glass rather than ten cents as they had in 1944 due to the use of a small sized glass. They were also directed to sell wine at twenty cents and ten cents instead of thirty cents and fifteen cents as they had charged in 1944. This resulted in a reduction in revenue of 10 per cent on beer *354 and 33 per cent on wine. Petitioners returned to the original higher prices in 1946. Receipts from the sale of merchandise were placed in a cash register and recorded on the tape. The cash register was old and required occasional repair. About every two weeks a bookkeeper would pick up the cash register tapes and receipts for disbursements, take them to his home and record them in the books maintained for petitioners. No omissions nor errors in the books were revealed. Petitioners, with essentially the same equipment, realized gross profits in the years 1944, 1945, 1946 and 1947 of 39 per cent, 26 per cent, 37 per cent and 39 per cent, respectively. For the calendar year 1945 petitioners' profit and loss statement was as follows: Sales
$22,737.77
Coin Machines
1,555.45
24,293.22
Inventory 1/1/45
$ 352.28
Purchases
16,730.03
17,082.30
Inventory 1/1/46
254.00
16,828.30
Gross Profit
7,464.92
Total operating expenses
4,702.35
Net Profit
$ 2,762.57
Included in operating expenses were such items as laundry, repair, financing, rent, maintenance, fuel and donations. An average gross profit margin for taverns in the areas of Tacoma *355 and Seattle, Washington, as determined by respondent, was about 45 per cent. Upon this basis, respondent accepted as accurate petitioners' cost of goods and made a determination that petitioners' total sales in 1945 were $28,047.17 based on a gross profit margin of 40 per cent. We find, however, petitioners' total sales in the amount of $22,737.77, a gross profit margin of about 26 per cent, as reflected by their books, to be accurate. Petitioners timely filed their return for 1945 showing tax payable in the amount of $446, but failed to sign it, explaining that this was overlooked. Inadvertence does not constitute reasonable cause for failure to file a proper return as required by section 291, Internal Revenue Code, hence petitioners are liable for the delinquency penalty of 25 per cent. Opinion Respondent has disregarded petitioners' computation of taxable income as reflected by the books and records of the Denny Station Tavern and in accordance with section 41, [1] Internal Revenue Code, has reconstructed the amount of petitioners' gross sales by means of the mark-up method. Upon the basis that taverns in the Tacoma-Seattle area *356 realized an average gross profit margin of 45 per cent, respondent accepted as accurate petitioners' cost of goods and recomputed total sales to be in the amount of $28,047.17 based on a gross profit margin of 40 per cent instead of $22,737.77 or a gross profit margin of 26 per cent as reported. From the evidence before us, we are satisfied that respondent arrived at an excessive figure in view of the circumstances surrounding the operation of petitioners' business. The unbusinesslike manner of operation and the poor condition of the equipment used, with its resulting loss of profit, are consistent with the operations and earnings of a less than average *357 business of this type. These conditions existed in other years as well as the year before us, but circumstances applicable only to 1945 resulted in a further reduction of gross profit. A loss of 10 per cent on beer and 33 per cent on wine sales was brought about by the OPA order compelling petitioners to sell at prices under those charged in other years. Although the OPA prices may have been consistent with prices charged in other taverns, as suggested by respondent on brief, they were less than those ordinarily charged by petitioners and resulted in a lower profit margin in 1945 in relation to other years. Whether we say that the evidence convinces us that there is no deficiency, or that at least petitioners have made a sufficient showing to shift the burden to respondent of going forward with the evidence, see Alfred A. Nahman, 21 B.T.A. 121; Kern v. Poe, 8 Fed. Supp. 942, the conclusion remains that on the record before us petitioners did not realize gross profits in excess of those shown by their books and that these were consistent with their actual operations. Moreover the mere fact that petitioners, in the taxable year before us, did not realize *358 a gross profit margin equal to other years or equal to the average of other taverns throughout Tacoma and Seattle does not, standing alone, in our view, provide sufficient basis for disregarding petitioners' books for the reason that income is not clearly reflected. No error nor omission was revealed in petitioners' books. Respondent asserts that their inadequacy arises from their being based on the recording tape of an old cash register which required occasional repair. This machine, however, was not shown to be inaccurate. We can not presume it to be inaccurate, as respondent would have us do, merely because of its age and occasional repair. Petitioners claimed a deduction of $1,266 for interest paid on a loan during the calendar year 1945. The principal amount of the loan was $5,724; to this was added the sum of $1,026 denominated as finance charges, making the total amount due $6,750. No interest rate was specified. During 1945 petitioners made total payments on the loan in the amount of $3,672. Respondent's agent, after inspecting the books of petitioners and the American Discount Corporation, computed the amount of $523 as being allocable to the payment of interest and deductible *359 as a business expense. The remaining amount of $743 was disallowed as a business expense by respondent as being the payment of charges other than interest. Evidence to refute respondent's determination and to show him to be in error was within the power of petitioners. They have presented no evidence either to substantiate their claimed deduction or to show the respondent to be in error. The petitioners having thus failed, we accept respondent's determination of the amount of interest paid which is deductible as a business expense. Respondent has disallowed the sum of $108.50, denominated "Donation" on petitioners' return, in the computation of adjusted gross income. The items making up this total are "Childrens' Christmas Party" $103.50, and "War Chest" $5. It is respondent's contention that a party given for children who are restrained from being customers of the tavern by a state statute would not be productive of a business benefit. With this we do not agree. Petitioners' business is located in a residential area and is dependent upon the steady patronage of the residents in the surrounding neighborhood and not upon transient trade. It is to petitioners' advantage to become *360 well regarded in the neighborhood, which could be accomplished in part by a Christmas party for the children of the neighborhood. We believe it would benefit petitioners, from the standpoint of advertising, in becoming better known in the neighborhood and also from the view of acquiring good will, thus realizing a business benefit. The contribution of $5 to the "War Chest" is a charitable contribution and, as such, it is not a proper item to be included as a business expense in arriving at adjusted gross income. Further, in as much as petitioners have elected to compute their tax by means of the tax table as provided by section 400 of the Code, which automatically allows about 10 per cent of the total income for charitable contributions, etc., no specific additional deduction may be allowed for charitable contributions. Respondent, by amended answer, affirmatively alleged that for failing to execute their income tax return for 1945 and not having shown that such failure was due to reasonable cause, petitioners are liable for a delinquency penalty provided by section 291 (a)[2] of the Code. *361 It is well settled that where a return is timely filed, but where it is not properly executed, such a return is not a proper return filed within the time required by statute and the delinquency penalty will attach. Plunkett v. Commissioner (C.A., 1st Cir., 1941), 118 Fed. (2d) 644. Cf. Lucas v. Pilliod Lumber Co., 281 U.S. 245; Uhl Estate Co. v. Commissioner (C.A., 9th Cir., 1940), 116 Fed. (2d) 403. The statute does not require a mandatory assessment of the 25 per cent penalty if reasonable cause can be shown. Commissioner v. Lane-Wells Co., 321 U.S. 219, but when the penalty is assessed, and where, as here, there has been no showing of reasonable cause, the penalty will attach to the correct amount of tax ultimately found to be due. Plunkett v. Commissioner, supra.
Decision will be entered under Rule 50. Footnotes
1. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩
2. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *↩