Frank Shinkonis and Virginia Shinkonis, Husband and Wife, v. Commissioner.
Shinkonis v. Commissioner
Docket No. 23093.
United States Tax Court
1951 Tax Ct. Memo LEXIS 219; 10 T.C.M. (CCH) 503; T.C.M. (RIA) 51153; May 25, 1951
*219 John F. Kane, Esq., 841 Penobscot Building, Detroit 26, Mich., for the petitioners. Thomas V. LeFevre, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding was initiated to test the correctness of respondent's determination of a deficiency in the amount of $4,002.53 for the calendar year 1945. The major issue is the amount of petitioners' gross income from the operation of a tavern. Respondent concedes that should petitioners prevail on the major issue they will be entitled to a refund in the amount of $266.50 which represents an overpayment of their 1944 tax which was credited against the deficiency determined for 1945, and there will be a further refund arising from respondent's adjustment of the opening inventory of petitioners' tavern for the taxable year 1945 from $1,000 to $1,500. Respondent on brief now concedes that petitioners are entitled to dependency credits for the father and mother of petitioner Frank Shinkonis. Findings of Fact Petitioners Frank and Virginia Shinkonis, husband and wife, reside in Detroit, Michigan, and filed their joint Federal income tax return for the calendar year 1945 with the collector *220 of internal revenue for the district of Michigan at Detroit, Michigan. During the calendar year 1945, Frank and Virginia owned and operated a Class "C" Tavern known as Virge's Bar at 3504 Myrtle Street. This bar is located in the lower west side of Detroit, Michigan, and is in a classification commonly known as "neighborhood bars". The customers of the bar are mostly laborers and factory workers. Besides the owners the bar had three employees. The books and records covering the operation of the bar were kept by Frank, and the method of bookkeeping was adequate except that certain credit sales were not entered on the books. All purchases of merchandise, supplies, and equipment were paid for with cash taken from the cash register when the purchases were delivered to the bar. The receipts for the purchases were then placed on a spindle along side of the cash register. At the close of each business day, Frank would reconcile these purchase receipts with the cash in the cash register and would then enter the amounts shown on the purchase receipts in the books and records under the date when the purchases and expenditures were made and under a properly designated column. After the *221 entries had been made, the receipts for each particular day were clipped together and placed in a cigar box labeled with the month when the purchases and expenditures were made. At the end of each month, the various columns were totaled and the totals added to the summary sheet in the books and records. At the end of the taxable year, the totals from the summary sheets were placed on the income tax return. Sales were made for cash and on credit. When a sale was made for cash the bartender on duty who made the sale and who received the cash would ring the amount up on the cash register and deposit the cash in the cash register. On no occasion was cash received for merchandise which was not rung up and deposited in the cash register. The cash register used in the business was not equipped with a tape but did have a totalizer. At the end of each business day Frank would take the reading off the cash register and mark the total on a slip of paper. He would then reconcile the cash in the register. Afterwards he would take the total as shown on the slip of paper and enter the total in the books and records under the corresponding date and in the properly designated column which total represented *222 total cash sales for that particular date. At the end of each month, the cash sales column was added and the total carried to the summary sheet in the books and records. At the end of the year, the monthly totals were added and this figure was placed in the books as total cash register reading for the year. For the year 1945 this total amounted to $41,843.30. When sales were made on credit the bartender on duty would mark the amount of the sale and the name of the person to whom the credit was extended on a slip of paper and place the slip in a cigar box which was kept beside the cash register. These sales were not rung up on the cash register. When the debtor paid his bill the slip representing the bill was marked "paid" and the cash placed in the cigar box. At the close of the business day, Frank would remove the cash from the cigar box and place it with the other business cash. He would not, however, ring this cash up on the cash register and so it was not reflected in the daily cash sales recorded in the books and records. The credit slips were preserved and at the end of the year Frank would add up the amount of credit sales and then add this total to the total amount of cash *223 sales and this combined total would be placed on the income tax return as gross sales from the business. The total credit sales for 1945 amounted to $3,723.90. This total, while it is included in the income tax return was not placed in the books and records because the business of the taxpayers is operated under a license from the Michigan Liquor Control Commission which has a rule prohibiting credit sales by licensees and the taxpayers feared that if the credit sales were placed in the books and records they would be subjected to a violation in case their books were audited by the Liquor Commission. The bar had a music juke box and a skill machine. These machines were not owned by the taxpayers. For permitting the machines to be on the premises the taxpayers received 50 per cent of the gross amount placed in the machines. Periodically the owner of the machines would come to the bar and open them up and after counting the money contained therein, would give 50 per cent of it to the taxpayers. This money was not rung up on the cash register but was handled separately. As he received these payments, Frank would enter them in the books and records of the business under a column designated *224 "Juke Box" or "Skill Machine" as the case called for. At the end of the year the total amount of this income was placed on the income tax return as a separate item of income. For the year 1945 this income amounted to $1,058.65. The bar did not charge for "set-ups" which accompanied purchases of whiskey. When a customer spilled a shot of whiskey or a glass of beer on the bar a refill was given without charge. It was the practice of Frank to give his customers a free drink with approximately every six drinks they purchased. The last two or three gallons of draft beer in every keg sold had to be thrown away since it had a tendency to go "flat". At various times during the year, bottles of whiskey were dropped and broken and their contents lost. The bar sold beer and wine to take out. In order to meet competition the prices charged for this merchandise were very nearly the same or slightly higher than those charged by the neighboring grocery store. The Commissioner in determining the proposed deficiency accepted the books and records of the taxpayer in so far as they reflected purchases and expenses of operating the business and in so far as they reflected income from the music juke *225 box and skill machine. He disregarded the books and records in so far as they reflected gross sales and redetermined gross sales by the use of a unit mark-up system which was based primarily on the average price of merchandise purchased with a mathematical computation which assumed that the taxpayers sold 28 "shots" of whiskey out of each bottle purchased at 28 cents per shot; sold 24 bottles of beer out of each case purchased at 15 cents per bottle; sold 198 glasses of beer out of each keg purchased at 10 cents per glass; and received a 50 per cent profit on all wine purchased during the taxable year. Based on this formula the gross sales were determined to be $55,863.16 instead of $46,625.85 as reported by the taxpayers on their income tax return for the year 1945. Opinion ARUNDELL, Judge: The sole question we have left for decision is the amount of petitioners' gross income derived from the operation of Virge's Bar. The Commissioner in determining the proposed deficiency has used the books and records of the taxpayers in so far as they reflected purchases and expenses of operation, and the income from the music juke box and skill machine. The books and records were disregarded *226 by the Commissioner in so far as they reflected gross sales and in lieu thereof gross sales were determined by the unit mark-up system which is set forth in some detail in the last paragraph of our findings of fact. The respondent's method was admittedly not based on any factual information as it pertained to the operation of Virge's Bar, but on assumptions of the Revenue Agent based on what he testified to be his experience with the operation of similar bars. The Revenue Agent's assumption that petitioners sold 28 "shots" of whiskey out of each fifth purchased was denied by petitioners and their witnesses as being contrary to the fact, and taking into consideration the spillage and free drinks we are satisfied that the "shots" sold per fifth of whiskey were very much less than contended for by respondent. It was also testified that out of keg beer there was a large loss due to the beer in the bottom of the keg becoming stale and unsalable. This case is entirely factual and decision must be rested on the facts as established by the testimony. On the record as made it is our opinion that the gross sales as reported in the returns should be accepted as correct, and as this is the only *227 issue submitted for decision it follows that the petitioners must prevail. Decision will be entered under Rule 50.