**BECHELLI et ux. v. HOFFERBERT.**

**GIANGRANDI et ux. v. HOFFERBERT.**

**Civ. A. Nos. 5998, 5999.**

United States District Court
D. Maryland, Civil Division.
April 10, 1953.

Edward L. Rich, Jr., Baltimore, Md., for plaintiffs.

Bernard J. Flynn, U. S. Atty., and Paul C. Wolman, Jr., Asst. U. S. Atty., Baltimore, Md., Donald P. Hertzog, Sp. Asst. to Atty. Gen., for defendants.

CHESNUT, District Judge.

These two cases were tried together as they involved mainly similar questions.

The plaintiffs in both suits are suing the Collector of Internal Revenue for alleged overpayment of personal income taxes for the years 1943, 1944 and 1945. After the plaintiffs had duly filed their income tax returns for the respective years the Commissioner of Internal Revenue in due course assessed deficiencies against each of the taxpayers for the respective years including a 5% penalty for alleged lack of due care in preserving bookkeeping records, and interest. The said deficiency assessments were promptly paid by the taxpayers who, with the exceptions hereinafter noted as to the plaintiff Bechelli for the years 1943 and 1945, timely filed petitions for refund of overpayments. With a minor exception hereafter noted the Commissioner has either overruled these petitions for refund or more than six months has elapsed since the petitions were filed. With the exception as to the plaintiff Bechelli for the year 1943 timely suits have been filed to recover the alleged overpayment of taxes. Both cases have been heard on evidence and oral and typewritten arguments of counsel, without a jury.

The plaintiffs Bechelli and Giangrandi are naturalized citizens of former Italian nationality who have been engaged as partners in the business of conducting a comparatively small bar and restaurant in Baltimore City at or near 8 E. Preston Street, since 1934. Prior to 1943 they had filed partnership income information tax returns for many years and continued to do so in the same general way for the tax years in question. They also filed their individual income tax returns jointly with their respective wives. No objection or criticism has been made by the Commissioner with respect to the correctness as to the net income shown by these returns except with regard to the item of income from the partnership. They were partners entitled to an equal division of the profits. The Commissioner determined that the partnership income had been understated for the three years in question respectively as follows:

| | |
|---|---|
| For the year 1943 | $5,130.02 |
| For the year 1944 | 9,417.62 |
| For the year 1945 | 764.37 |

Accordingly he determined deficiency assessments against Giangrandi and wife for understated income in the following amounts:

| | |
|---|---|
| For the year 1943 | $1,488.14 |
| For the year 1944 | 920.31 |
| For the year 1945 | 123.78 |

For Bechelli and wife the income deficiency was stated to be:

| | |
|---|---|
| For the year 1943 | $1,830.11 |
| For the year 1944 | 1,868.67 |
| For the year 1945 | 141.40 |

In all cases the Commissioner added a 5% penalty and interest. In considering the weight and effect of the evidence I accept the now well established rule in such cases that there is a presumption in favor of the correctness of the Commissioner's determination and the burden of proof, by a preponderance of the evidence, is on the taxpayers to show the contrary.

The principal contention of counsel for the defendant Collector is that the bookkeeping records of the partnership were inadequate and insufficient to enable the Commissioner to determine the correct partnership income.[1]

---

1. Reference is made to section 54(a) of the Internal Revenue Code, 26 U.S.C.A., which provides in material part:
"Every person liable to any tax imposed by this chapter * * * shall keep such records * * * as the Commissioner * * * may * * * prescribe."
Section 29.54–1, Treasury Regulations 111 states:
"Every person subject to the tax * * * shall for the purpose of enabling the Commissioner to determine the correct amount of income subject to the tax, keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any return under chapter 1 * * *."
Section 41 of the Internal Revenue Code provides:
"The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance

After hearing all the evidence in this case, including the testimony of Bechelli and Giangrandi and of their bookkeeper or accountant, and an examination of the exhibits in the case, including the partnership books, I conclude that the records of the partnership business as so kept were adequate as a matter of law and were reasonably and substantially correct in view of the nature of the business.

Bechelli and Giangrandi are not very literate or well educated persons but their bookkeeping was done for them by a Mr. Owens, a thoroughly credible witness, not an expert accountant but nevertheless familiar with proper bookkeeping methods from long experience as a clerk to the Deputy Comptroller of the B. and O. Railroad Company. He was a very long time and close friend of the partners and performed the service for them without pecuniary compensation, but was frequently at their place of business. The method of keeping the books was this. At the end of each day Giangrandi (or at times his chief employee in the business) prepared a written itemized statement showing the cash receipts of the day as taken from the tape on the cash register and an itemized statement of the expenses paid for the day for supplies for the bar or kitchen. This daily account of receipts and expenditures was given to Mr. Owens every two or three days and taken home by him and entered in the books for each day, at the end of the month for his own convenience. The daily sheets were not preserved but the receipts for the day and the expenses of the business, the latter separately classified, were recorded in permanent books which were offered in evidence. These books show that such an entry was made for each day of the month. Originally the daily receipts from the bar and from the kitchen were not separated but during the war years, when food rationing was in force, the bar receipts were entered separately from the kitchen receipts. The expenses were classified and separately entered for each day under different headings such as "bar expense, kitchen expense, salaries, miscellaneous supplies, laundry, rent, electricity and telephone, advertising and donations, fixtures and repairs, taxes, license fees, watchman service, miscellaneous." The testimony of the witnesses satisfied me that the bookkeeping was honestly and fairly done and that the figures entered in the books for gross income and expenses were substantially correct. The critical test as to the sufficiency of the books on their face is whether they are sufficient to calculate the net income. If they are sufficient in this respect then the simpler the books the better. There is no prescribed detail as to just what books or how many must be kept. The question in each case must be determined on its particular facts and in view of the nature, volume and complexity of the business. Here the books as kept do show day by day receipts and expenses. If the figures are correct the books are sufficient to show the net income. Of course the books on their face are not conclusive of the proper figures and their inaccuracy, whether by inadvertence or fraud, can be shown by other evidence. In this case there is no such other evidence; nor is there any evidence even of reasonable suspicion as to the fairness and accuracy of the books as kept. It appears from the evidence of the Internal Revenue Agent who was instructed to examine the books and prepare his report to the Commissioner, that the particular investigation was based primarily on an anonymous letter suggesting that one of the partners, Giangrandi, had recently been buying a substantial amount of government bonds. When this was suggested to Giangrandi he at

with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *"

Section 29.41–1 of Treasury Regulations 111 provides:

"*Computation of net income:* * * * If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner as in the opinion of the Commissioner clearly reflects it."

once without hesitation and with entire voluntary cooperation with the agent took him to his safe deposit box and showed all the investments that he had which the agent was frankly candid in saying were purchases well within the taxpayer's income. Nor is there any evidence of any other increase in net worth of either of the taxpayers. Both are men of comparatively modest property holdings consisting principally, as to Bechelli, of the ownership of the building in which the restaurant is conducted on the lower floors and, as to Giangrandi, his principal holdings consist of his dwelling and a few thousand dollars of bonds or stock accumulated by the partners respectively during their nearly twenty years of business activity. Nor is there any evidence tending to show large or unusual expenditures on their part. Still further their testimony as witnesses subject to examination and cross-examination very affirmatively tends to indicate that their business and their business records were honestly conducted and kept. They both seemed to me to be entirely credible witnesses.

The chief contention of government counsel as to the alleged inadequacy of the records is that the partnership did not preserve the daily cash register receipts or table checks to support the figures in the books after the entries had been made in the permanent book. Thus it is said that the books consisted only of a cash book and invoices. But in addition thereto the partnership did keep a bank account which was made available to and examined by the revenue agent. No criticism is based on it nor on the sufficiency or accuracy of the invoices for goods purchased. As the larger part of the purchases for the business consisted of whiskey, wine and beer for the bar there were, by virtue of various governmental regulations, records of all such purchases and there is no criticism of the accuracy or completeness of the invoices or expenditures for food and liquor.

Counsel for the parties have cited a number of cases tending to support their respective contentions with regard to the adequacy of the partnership books but both freely admit that none are of themselves controlling precedents in view of the particularities of the case. I think it unnecessary to extend this opinion by reference to the facts of these cited cases except to say that many of them have been examined and most are not really even closely parallel on the facts to the instant case, with the exception that a few cases in the Tax Court may be thought to present not very different factual situations where the books were found adequate under the special facts. Ward v. Commissioner, 1948, 7 T.C.M. 505; Miller v. Commissioner, 1951, 10 T.C.M. 33; Shinkonis v. Commissioner, 1951, 10 T.C.M. 503.

As the partnership books have been found adequate for the determination of the partnership income it seems unnecessary to discuss in detail the basis for the Commissioner's restatement of income. I will, however, refer to it briefly because I think its analysis will, on comparison with the evidence in the case, show that it is here quite inapplicable. The re-computation of the partnership income as made by the Commissioner has been filed as an exhibit to the complaint in each of the cases as Plaintiff's Exhibit No. A7, and has been further explained in the rather extended oral testimony of the Revenue Agent, Mr. Brown. It will be noted that the gross receipts of the partnership by the books were:

| 1942 | $80,937 |
| 1943 | 109,375 |
| 1944 | 95,233 |
| 1945 | 105,366 |

(the odd cents in each case eliminated)

It will also be noted that the Commissioner's figures as a result of the restatement of the income shows an understatement of sales of—

| 1943 | $5,130 |
| 1944 | 9,417 |
| 1945 | 764 |

It also appeared from the evidence of the Agent that he has accepted without question the expenses of the business consisting of labor, supplies and food and he also did not question the accuracy of the cash receipts as reported in the books for food; or, in other words, the items in the book for receipts from the kitchen. The only

item which he questioned and undertook to revise was the receipts from the bar. These consisted of the sales of whiskey, wine and beer. The receipts from these three sources or bar revenues were not segregated in the books and I know of no requirement that they should have been. It was the theory of the Agent that the partnership must have made larger profits on the sale of whiskey than the books apparently indicated from the bar receipts. What the agent undertook to do, therefore, was to determine what percentage of the total bar receipts was attributable to the sale of whiskey. It is not contended that this percentage could be determined with real accuracy but the Agent estimated that 64.3% of the bar receipts were for whiskey. He reached this percentage by a comparison of the purchase invoices for all liquor in 1944 which he said showed that 64.3% of all liquor purchased was whiskey. He then assumed without further computation that the same percentage of whiskey was purchased for the bar in 1943 and 1945. And he further assumed that the percentage of whiskey sold at the bar should be the same as the percentage of all liquors bought for the bar in the one year. Having thus estimated the percentages of whiskey, wine and beer sold, he made a further division between whiskey sold in the package (by the bottle or case) and the amount of whiskey sold at the bar by the glass or drink. His computation then proceeded to estimate the gross profit that *should* have been received from the individual sales of the several classes of liquor by applying to each sale a so-called "mark-up" of sale price over cost price. For this mark-up price he assumed, based on information received from a circular issued by Seagram Distillers, that bar whiskey, that is whiskey sold by the drink served over the bar to an individual customer, should be marked up 144%. He further assumed the bottled whiskey should be marked up 26% and that beer should be marked up 100%, while wine and food should not be marked up over cost price at all.

 Counsel for the plaintiffs dispute the propriety of the mark-up practice both as to the amount and as to principle. I am satisfied, however, that where the taxpayer engaged in merchandising does not keep books which if true show the receipts from sales, there is good judicial authority to apply a proper percentage of mark-up for sale price over cost price. The percentage, of course, will vary with the particular business. Gamm v. Commissioner, 5 Cir., 39 F.2d 73; Harvey v. Early, 4 Cir., 189 F.2d 169; and numerous other cases in the Tax Court. But while the use of mark-up is correct in principle in particular cases, I am satisfied that the evidence in this case makes it inapplicable both in principle and in fact, and the figures that are ultimately obtained thereby are based on analyses and assumptions which are contrary to the actualities of the case as disclosed by the evidence. In the first place, it is not at all clear to me that the Agent's percentage figure of 64.3% for whiskey sold is a reliable figure even as a reasonably approximate estimate. Again it seems to have been the assumption that all the whiskey used at or in connection with the bar was paid for at certain minimum prices of not less than 35¢ per drink of a certain quantity. The evidence as to the activities of the business show that the Agent's estimates as to price and quantity were less than he figured. For instance, the evidence of the bartender was that many drinks were sold for 25¢ and not for 35¢ per established quantity and that for much of the time the quantity per drink was more than that estimated by the agent. Again the Agent assumed that beer was sold at 20¢ per glass while the testimony shows that it was sold at 15¢ per glass. Still further evidence was that during the war years the quality of employees for service was poor and there was much incidental loss in spillage, breakage and pilferage. It thus seems clear enough that the basis for revision of the partnership income as made by the Commissioner in this case is far more complex than the simple application of a mark-up of sale price over cost price to determine receipts where quantities of the goods sold are known but the books do not correctly show the actual receipts. In the instant

case the revision made is more highly complex in that to determine the quantity sold requires a very detailed analysis of figures based on various assumptions and resulting in estimates only and is applied not to actual known gross quantities sold but only to one kind of one class of liquors sold. Counsel have not referred me to any case which seemingly justifies a revision of this complex character.

I conclude, therefore, both on the law and the facts that the partnership returns were adequate, sufficient and accurate. In passing it is to be noted that the partnership returns themselves were not offered in evidence because counsel for the government stated that pursuant to Act of Congress the partnership returns themselves had been destroyed after six years from the time the returns were made. However, a copy of the partnership return for 1945 was available and it is not disputed that the partnership returns as made were in accordance with the partnership books offered in evidence. It is also to be noted that the partnership books were kept in the same way for 1946 as for the prior years and after audit by the Commissioner accepted as correct.

While I have found the bookkeeping of the partnership to be adequate and the revision thereof by the Commissioner not sustainable in this case, there are some other questions of law which require decision.

■ The Commissioner imposed a 5% penalty for the taxpayers' carelessness in bookkeeping records. It will be noted that this was not a fraud penalty and the government has not charged fraud at all in this case. Counsel for the government states that the 5% penalty was imposed for the failure to preserve inventories in sufficient detail and also because there were no capital or income accounts between the partners themselves. It is not contended that in fact either partner overdrew his half share of the profits. The failure to preserve supporting data such as table checks or particular bar receipts, if any were given, was naturally a matter of dissatisfaction to an expert accountant and it is obvious that if more care had been

taken in this respect very probably these suits would have been avoided. I do not think the Commissioner acted arbitrarily or capriciously in imposing the 5% penalty for the reason stated. I have concluded that his action in this respect should not be disturbed. It results that Giangrandi and wife as plaintiffs in case No. 5999 are entitled to recover the overpayment of taxes by them with interest less, however, the penalty of 5% just referred to.

It further results that Bechelli and wife are entitled to recover the overpayment claimed by them with interest, less the 5% penalty for the year 1944; but with respect to the years 1943 and 1945 there are other questions of law which preclude any recovery for those years.

The Bechellis did not timely file their suit for refund for the year 1943. They were notified by letter from the Commissioner dated June 2, 1950, and delivered to their attorney's office on June 3, 1950, that their claim for refund for the year 1943 was rejected by the Commissioner. Their suit for the refund was not filed until August 15, 1952, more than two years thereafter. The Internal Revenue Code, 26 U.S.C.A. § 3772(a) (2), provides:

"(2) No such suit or proceeding shall be begun * * * after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates."

■ The detailed evidence shows that the Commissioner's written notice of the rejection of the claim for 1943 was duly sent by registered mail to the Bechellis under date of June 2, 1950. The postmaster at Baltimore receipted for the letter which has been offered in evidence, and it was delivered to and receipted for by the letter carrier on the same date. A return receipt was not requested by the government but according to the established Post Office Department practice the carrier obtained the receipt of the attorney's clerk on June 3, 1950, which has been retained by the Post Office. The several

papers just referred to have been offered in evidence. The only possible flaw in this written evidence is that the carrier by mistake copied wrong one of the five digits of the stamped number on the envelope in the clerk's receipt. I find this was a mere clerical mistake. There was no evidence to show that any other registered letter was handled or delivered by the carrier to the attorney's office on that date. The notice from the Commissioner was addressed to the taxpayers in care of their attorney at his then post office business address. It appears that the letter was delivered on a Saturday morning when the attorney's office was in charge of a part-time clerk employed only from time to time. As a witness she identified her signature to the receipt and said she did not open the letter but left it for the attorney's attention on his expected return to the office on Monday. The attorney states that he did not in fact receive the letter. The clerk said that she doubted whether she had any particular authority to sign for the letter but the circumstances were such that the authority must be presumed as a matter of law. The failure of the attorney to actually receive the letter is apparently an unfortunate mischance in his office routine. The attorney had previously filed with the Treasury Department a power of attorney from the Bechellis to act for them in the matter and he had in fact previously been giving attention to the subject matter for his clients. He points out that a printed form on the power of attorney given to him made reference to the fact that it might not or would not be accepted by the Treasury Department as a sufficient revocation of the authority of a prior agent who also had previously filed a power of attorney from the taxpayers. But in view of all the evidence on the point I conclude as a matter of law that the notice was sufficient. Furthermore, the statute seemingly does not require actual delivery of the notice but only the mailing of the notice by registered mail. There is no possible doubt on the evidence that the notice was so mailed.

Counsel for Bechelli urges that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58

S.Ct. 817, 82 L.Ed. 1188, the Maryland law with respect to sufficiency of notice by mail requires that in the case of a registered letter delivery to the addressee must be proven by the sender. Fidelity & Casualty Co. v. Riley, 168 Md. 430, 431, 435–436, 178 A. 250. But clearly the jurisdiction of the court here is not based on the diversity of citizenship but is under a federal statute with regard to income taxes and where, of course, the federal statute must control.

The Bechellis paid the total amount of the deficiency assessed against them for the three years of 1943, 1944 and 1945, to wit $4,743.86, on December 31, 1947. Of this total claim for refund the amount claimed with penalty and interest for 1945 was $162.45, for which claim was filed December 27, 1949. But prior to this last mentioned claim for $162.45 the Bechellis had on April 4, 1949 filed a petition for refund in the amount of $399 based on their failure to have included a claim for certain dependents. The later claim was not filed within three years after the tax return had been made (March 16, 1946) but was within two years after the payment of the deficiency tax which was December 31, 1947. On August 6, 1950 the Bechellis were refunded $148.47 plus interest of $24.72, representing the deficiency in tax and penalty for the year 1945 which had been paid by Bechelli on December 31, 1947. The Internal Revenue Code, 26 U.S.C.A. § 322(b) (1), provides:

"(1) *Period of limitation.* Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer."

Counsel for the Collector states that the Bechellis' claim for a refund of

$399 would have been properly allowed had it been filed within three years after the date of the original return, but as this was not done it could properly be allowed only to the extent that a payment had been made to the government within two years prior to the date of the petition for refund. As the only payment which had been made to the government for the year 1945 was a deficiency assessment with penalty and interest amounting to $162.45, only that amount could properly be refunded under the statute. As the statute is controlling it results that the Bechellis cannot now recover any larger part of their petition for refund for the year 1945.

Counsel can submit the appropriate forms for judgments in favor of the plaintiffs for the amounts to be calculated in accordance with the principles stated in this opinion. It is suggested that counsel for the respective parties confer and agree upon the exact amounts to be awarded the plaintiffs respectively with interest in accordance with the applicable statutes.