NICHOLAS G. MICHAS AND JEAN D. MICHAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michas v. Commissioner
Docket No. 18110-88.
United States Tax Court
T.C. Memo 1992-161; 1992 Tax Ct. Memo LEXIS 164; 63 T.C.M. (CCH) 2452; T.C.M. (RIA) 92161; March 19, 1992, Filed *164 Decisions will be entered under Rule 155. Joseph H. Thibodeau, for petitioners. Frederick J. Lockhart, Jr., for respondent. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency and additions to tax in petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1984
$ 34,662
$ 1,733
50 percent of $ 8,666
the interest due
on $ 34,662
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year 1984, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners had unreported income for the taxable year 1984; (2) whether petitioners had income subject to the tax on self-employment income equal to or in excess of the $ 37,800 maximum subject to the self-employment tax for 1984; (3) whether petitioners are subject in 1984 to the section 4973(a) 6-percent excise tax for excess contributions to individual retirement accounts; (4) whether petitioners are liable for the addition to tax for negligence or intentional *165 disregard of the rules and regulations pursuant to section 6653(a)(1) and (2) for the taxable year 1984; and (5) whether petitioners are liable for the addition to tax for substantial understatement of income tax liability pursuant to section 6661 for the taxable year 1984. FINDINGS OF FACT
Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners at all relevant times herein were husband and wife, and at the time of filing their petition, resided in Englewood, Colorado. During the taxable year 1984, petitioners were self-employed and income from their businesses was reported on an accrual method of accounting. During the taxable years 1982, 1983, and 1984, petitioner Nicholas G. Michas owned, as a sole proprietorship, a retail liquor store in Lakewood, Colorado, doing business as Frontier Liquors. During the taxable years 1982, 1983, and 1984, petitioners owned as general partners a retail cosmetics store in Denver, Colorado, doing business as Niko's Cosmetics. During taxable year 1984, petitioner Nicholas G. Michas was a general partner in Michas Brothers, a general partnership *166 in Englewood, Colorado. On Schedule C of their 1982, 1983, and 1984 Federal income tax returns, petitioners also reported a net profit from a business operating under the name "Empire Liquors" in Thornton, Colorado. The Schedules C listed Jean D. Michas as the proprietor. Sometime in January 1985, respondent began auditing petitioners' prior years' returns. Eventually, respondent issued separate statutory notices of deficiency for each of the years 1982 through 1985. For the taxable years 1982, 1983, and 1984, respondent determined that petitioners' books and records were inadequate and did not accurately reflect income. Accordingly, respondent recomputed petitioners' income based on their increase in net worth plus nondeductible personal expenditures. Petitioners' reported gross receipts were based on a daily summary which they generated on a calculator. Respondent felt that this method of determining gross receipts (as opposed to a determination based on cash register tapes) was not subject to any internal controls and could easily be manipulated. Petitioners at one time possessed original cash register tapes for Empire Liquors and Frontier Liquors for 1984. These tapes *167 were retained for a time, but at the time of trial, petitioners did not possess any of the tapes. Respondent also questioned cost of goods sold which petitioners reported on their 1984 return, because petitioners did not have the records upon which they based their cost of goods figure. Petitioners at one time possessed contemporaneous written records of the physical count of ending inventories relating to the cost of goods sold by Empire Liquors, Frontier Liquors, and Niko's Cosmetics during taxable year 1984. Petitioners retained these records for a time but did not possess such records at the time of trial. In the notice of deficiency, respondent determined that during 1984, petitioners' net worth increased by $ 85,961.48. This determination was based on the following analysis: Year Ending
Year Ending
Assets
12/31/83
12/31/84
Empire Liquor:
Equipment  $ 16,275.00  $ 16,275.00    Equipment  937.00 937.00   Empire Liquor:
Inventory  159,905.61 153,034.85   Empire Liquor:
Cash  100.00 100.00   Empire Liquor:
Back-Up Change  400.00 400.00   Frontier:
Equipment  24,383.00 24,383.00   Frontier:
Inventory  161,813.00 181,179.00   Frontier:
Cash  100.00 100.00   Frontier:
Back-Up Change  300.00 300.00   Account
Year Ending
Year Ending
Accounts
Number
12/31/83
12/31/84
Schedule E
$ 1,317.00   $ (17,993.42)  Capital Gain Distribution on Sch. E
0.00 2,781.47   Engler Budd Company
0.00 6,381.06   M Merchandising
0.00 27,500.00   Hutton Con Am #2
10,000.00 10,000.00   IntraWest Bank
of Bear Valley  XXX-374-3
3,109.72 (3,513.46)  United Bank of
Littleton  XX-X7825
1,374.61 849.73   IntraWest Bank of
Northglenn  XX-0227
4,988.38 (3,841.51)  Stock Held Prior to 1984  1,547.00 1,547.00   Stock Held Prior to 1984  7,606.00 7,606.00   IntraWest of
Bear Valley  XXX0-995
557.84 1,335.06   First Interstate
Bk of Denver  XXX4634
1,921.46 823.31   Colorado National
Bank -- Arapa  XX0-270
2,602.57 45,039.09   Colorado National
Bank - DTC  XX2-195
1,647.06 626.11   Dreyfus Fund  XXXXXXXX988-7
15,524.23 10,457.87   Colorado National
Bank-TC  XXX2045
612.51 1,419.33   Capital Preservation
Fund  XXX3508
45,521.71 49,897.31   Founders Money Market
XXXXX565-9
5,361.42 5,889.52   Financial Program
XXX94-0-25
39,707.88 43,875.45   Fidelity
XXXXX4927
40,797.84 44,954.10   Merrill Lynch
XXX-X6666
61,817.15 31,395.15   Partnerships
XXX-X2121
30,729.49 30,729.49   Boettcher & Company
XX-X4561
10,000.00 22,823.73   Charles Schwab
Cash XXXX6113
2,771.66 0.00   Charles Schwab
Margin
28,429.59 23,005.19   Charles Schwab
815.00 11,432.75   Merrill Lynch,
Pierce, Fenner  431-39087
12,840.00 7,912.00   Cash
18.42 0.45   Stock
0.00 5,908,29   Janus Fund, Inc.
XXXXX805-4
10,000.00 10,897.47   T. Rowe Price
Trust Co.  XXXXX2527
8,760.17 11,766.77   T. Rowe Price
Trust Co.  XXXX2521
8,760.17 11,766.77   First Interstate
Bk of Denver  XXX2129
12,721.79 0.00   XXX2111
10,678.95 0.00   XX-X8005
0.00 15,752.78   XX-X7934
0.00 18,766.23   Federal Refund held
By IRS  5,000.00 5,000.00   Devine Mfg/S Corp.
12,500.00 12,500.00   CAPITAL ACCOUNTS:
Niko capital account  73,493.32 49,266.65   Michas Brothers  41,108.16 50,534.72   capital gain  7.03 7.03   TOTAL ASSETS
$ 878,861.74 $ 931.808.34   LIABILITIES
IntraWest Bank of
Bear Valley  (20,000.00)
0.00   United Bank of
Littleton  X-XX2914
(18,000.00)
(21,000.00) First Interstate
Bank of Denv.  XXXXXXXXXXXX9224
(16,198.34)
(21,269.55) A/P Frontier Liquors
(34,150.68)
(21,122.21) A/P Empire Liquors
(68,415.80)
(40,129.18) Depreciation
(424.00)
(196.00) N/P Empire
(5,000.00)
(25,457.00) NET WORTH BALANCE
$ 716,672.92
$ 802.634.40 PRIOR YEAR NET WORTH
$ (716,672.92)
INCREASE IN NET WORTH
$ 85,961.48 *168 Respondent also determined that petitioners made $ 49,675.58 in nondeductible personal expenditures in 1984. Respondent attributed the increase in net worth and the personal expenditures to taxable sources and determined that petitioners received unadjusted gross income of $ 135,637.06 for 1984. After making adjustments for a nondeductible capital loss of $ 1,324, a dividend exclusion of $ 200, IRA interest of $ 13,130.27, tax exempt income of $ 878.06, IRA contributions of $ 4,000, capital loss carryovers of $ 7,128, and a Schedule W deduction of $ 3,000, respondent determined petitioners' reconstructed adjusted gross income was $ 108,623.53 and that their corrected taxable income was $ 91,819.53. On their 1984 income tax return, petitioners reported adjusted gross income of $ 29,840 and taxable income of $ 9,097. The parties have stipulated the identity and amount of most of petitioners' assets and liabilities. The following findings with respect to petitioners' assets and liabilities incorporate the stipulated facts. During 1984, Empire Liquors and Frontier Liquors owned the following equipment and inventory, valued at cost, on the indicated dates: Year Ending
Year Ending
Assets
12/31/83
12/31/84
Empire Liquors:
Equipment  $ 16,275.00 $ 16,275.00 Equipment  937.00
937.00
Empire Liquors:
Inventory  159,905.61
153,034.85
Empire Liquors:
Cash  100.00
100.00
Back-Up Change  400.00
400.00
Frontier Liquors:
Equipment  24,383.00
24,383.00
Frontier Liquors:
Inventory  161,813.00
181,179.00
Frontier Liquors:
Cash  100.00
100.00
Back-Up Change  300.00
300.00
*169 The account balances of the following bank accounts were held in the name of either petitioners (jointly or separately), Empire Liquors, Frontier Liquors, Niko's Cosmetics, or Michas Brothers [1] on the indicated dates: Account
Year Ending
Year Ending
Number
12/31/83
12/31/84
IntraWest Bank of
Bear Valley (FL)  XXX-374-3
$ 8,311.80 $ 1,301.38 (FL)              XXX-1673
0.00
0.00
United Bank of
Littleton  XX-X7825
n2 1,374.61
849.73
or 1,481.61
XX-X6942
0.00
0.00
XX-X8526
0.00
0.00
IntraWest Bank of
Northglenn (EL)  XX-0227
12,801.66
1,794.06
or 5,099.08
or (3,841.51)
(EL)             XXX-0694
0.00
0.00
IntraWest of Bear
Valley  XXX0-995
557.84
1,335.06
First Interstate
Bank of Denver  XXX4634
1,921.46
823.31
Colorado National
Bank-Arapahoe  XX0-270
2,602.57
45,039.09
Colorado National
Bank-DTC (NC)  XX2-195
1,647.06
626.11
*170 The account balances of the following investment accounts, opened by and in the name of petitioners or either of them, and petitioners' investment status in the Howard S. Smith Lot, Ross Stebbins, Inc., and Devine Manufacturing on the indicated dates were: Account
Year Ending
Year Ending
Number
12/31/83
12/31/84
Howard S. Smith Lot
$ 599.90   $ 599.90
Ross Stebbins, Inc.
3,542.60
3,542.60
Engler Budd Company
0.00
6,381.06
M Merchandising
0.00
27,500.00
Hutton Con Am #2
10,000.00
10,000.00
Dreyfus Fund
XXXXXXXX988-7
15,524.23
10,457.87
HR or 16,124.23
or 20,415.74
or 31,048.46
Capital Preservation
Fund  XXX3508
45,521.71
49,897.31
Founders Money
Market  XXXXX565-9
5,361.42
5,889.52
Financial Program
XXX94-0-25
39,707.88
43,875.45
Fidelity
XXX230-3
0.00
0.00
XXXXX4927
40,797.84
44,954.10
Merrill Lynch
CSH 416-16666
50,000.00
31,394.46
or 61,817.15
Partnerships
XX-X21214
30,729.49
30,729.49
Boettcher & Co.
XX-X4561
10,000.00
22,823.73
E.F. Hutton Cash
XXX-X6144
0.00
0.00
Stock            XXX-X6144
0.00
0.00
XXX-X1966
0.00
0.00
Cash            XXX-X7098
0.00
0.00
Stock            XXX-X7098
0.00
0.00
Cash            XXX-X2003
0.00
0.00
Stock            XXX-X2003
0.00
0.00
Charles Schwab
[1] Stock             XXXX-6113
2,771.66
0.00
Margin            XXXX-6113
28,429.59
23,005.19
Stock            815.00
11,432.75
or 7,140.00
Merrill Lynch
CMA            XXX-X9087
12,840.00
7,912.00
Cash            18.42
0.45
Stock            0.00
5,908.29
T. Rowe Price
Trust Co.  200052527
8,760.17
11,766.77
T. Rowe Price
Trust Co.  XXXXX2521
8,760.17
11,766.77
First Interstate
Bank of Denver  (IRA)            XXX2129
12,721.79
0.00
(IRA)            XX-X8005
0.00
15,752.78
(IRA)            XX-X7934
0.00
18,766.23
(IRA)            XXX2111
10,678.95
0.00
Devine Manufacturing
12,500.00
12,500.00
Petitioners realized gain and loss from Schedule E partnerships and subchapter S corporations in the following amounts in taxable year 1984: Year
Ending
EIN
83/12
Hutton Con Am 81
13-3069026
$ 601.00  Greenwood Oil & Gas
84-0794584
(13.00)
Ordinary Income  66.00
Capital Gain  43.00
Devine Manufacturing
36-3156197
(174.00)
M Merchandizing
36-3299294
Boettcher
84-0958632
Boettcher
84-0911344
MLH
13-3138634
Montgomery Realty
94-2919856
Cumberland
84-0959395
Hutton Con Am 2
13-3100545
794.00
Capital Gain/rtn.
Sub-Total  $ 1,317.00
Other Partnerships:
Niko's - Jean Michas 50%  Niko's - Nicholas Michas 50%  Michas Brothers  Total  Reconciliation with Total Above
Return Schedule E Gain (Loss)  Capital Gain per Return  Section 179  Section 179  Total  Year
84/12
Ending
Gain (Loss)
84/12
Hutton Con Am 81
($ 121.00)   $ 480.00
Greenwood Oil & Gas
(13.00)
Ordinary Income  66.00
Capital Gain  43.00
Devine Manufacturing
(5,302.00)
(5,476.00)
M Merchandizing
(13,319.00)
(13,319.00)
Boettcher
9.87
9.87
Boettcher
(400.82)
(400.82)
MLH
196.00
196.00
Montgomery Realty
(49.00)
(49.00)
Cumberland
(222.47)
(224.97)
Hutton Con Am 2
(102.00)
692.00
Capital Gain/rtn.
$ 268.47   $ 268.47
Sub-Total  ($ 19,041.95)
n2 ($ 17,724.95)
Other Partnerships:
Niko's - Jean Michas 50%  $ 3,083.89   Niko's - Nicholas Michas 50%  3,083.90   Michas Brothers  3,926.56   Total  ($ 8,947.60) Reconciliation with Total Above
Return Schedule E Gain (Loss)  ($ 9,947.81) Capital Gain per Return  268.47
Section 179  454.00
Section 179  277.74
Total  ($ 8,947.60) *172 Petitioners realized and recognized a net long-term capital gain in the amount of $ 2,513 in taxable year 1984. Pursuant to the filed Federal partnership return of income, petitioner Nicholas G. Michas' capital account balance in the Michas Brothers partnership increased from $ 41,108.16 at December 31, 1983, to $ 50,534.72 at December 31, 1984, as follows: Capital account at 12/31/83
$ 41,108.16
Cash contributions during year  $ 5,500.00
Distributive share of ordinary  income  3,926.56
Distributive share of  partnership income  Net increase during 1984  $ 9,426.56
9,426.56
Capital account at 12/31/84
$ 50,534.72
Pursuant to the filed Federal partnership return of income, petitioners' combined capital account balances in the Niko's Cosmetics partnership decreased from $ 73,493.32 at December 31, 1983, to $ 49,266.65 at December 31, 1984, *173 as follows: Capital account at 12/31/83
$ 73,493.32 Cash contributions during year  $ 1,000.00  Ordinary income  6,167.79 Withdrawals and distrib.  (31,394.46)
Net increase during 1984  ($ 24,226.67)
(24,226.67)
Capital account at 12/31/84
$ 49,266.65 Petitioners had outstanding liabilities in the following amounts on the dates indicated: Account
Year Ending
Year Ending
Number
12/31/83
12/31/84
IntraWest of
Bear Valley  $ 20,000.00
$ 0.00     United Bank of
Littleton  X-XX2914
18,000.00
21,000.00
IntraWest Bank of
Northglenn  0.00
0.00
Colorado National
Bank-DTC  0.00
0.00
First Interstate
Bank of Denver  X0034
0.00
0.00
X0059
0.00
0.00
X0042
0.00
0.00
XXXXXXXXXXXX9224
16,198.34
21,269.55
Empire Liquors and Frontier Liquors had the following accounts payable on the indicated dates: Year Ending
Year Ending
12/31/83
12/31/84
A/P Frontier Liquors
$ 34,150.68
$ 21,122.21
A/P Empire Liquors
68,415.80
40,129.18
During the taxable year 1984, petitioner Nicholas G. Michas' brother, Dimitrios (Jim) Michas, had an account receivable from Empire Liquors. Empire Liquors carried this *174 account as a note payable in its ledgers. The ending 1984 balance for this Empire Liquors payable is in dispute. Respondent maintains that it is $ 12,457, and petitioners maintain that it is $ 25,457. As of December 31, 1983, the balance due Jim Michas on this account was $ 5,000. The "booked" balance of this account on December 31, 1984, was $ 25,457. On January 31, 1984, Jim Michas deposited $ 29,457 into the Empire Liquors IntraWest Bank of Northglenn checking account as a "Loan from Jim". Empire Liquors made disbursements designated as partial loan repayments to Jim Michas on March 1, March 12, April 2, April 16, June 11, June 30, July 24, October 25, and December 17, 1984, in the amounts of $ 1,500, $ 1,500, $ 2,000, $ 2,500, $ 2,000, $ 2,000, $ 3,500, $ 5,000, and $ 2,000, respectively, from its IntraWest Bank of Northglenn account. Thirteen thousand dollars was also deposited in this account on September 19, 1984. This deposit was designated as "Added Capital from Jean". On September 18, 1984, a check in the amount of $ 13,000 from the Dreyfus Liquid account number XXX XXXXX988-7 was deposited into the Empire Liquors account at IntraWest Bank of Northglenn. Respondent *175 determined that during the taxable year 1984, petitioners expended $ 49,675.58 for personal living expenses from the following sources: Bank
Account No.
1984 Amount
United Bank of Littleton
XX-X7825
$ 11,168.71
IntraWest of Bear Valley
XX0-995
13,208.14
First Interstate Bank of Denver
XXX4634
0.00
Colorado National Bank-TC
XX2-195
407.65
Dreyfus
XXXXXXXX988-7
0.00
Colorado National Bank-TC
XXX2045
0.00
Fidelity Income Trust
XXX2303
36.00
Colorado National Bank
Arapahoe  510-27-0
4,117.80
Subtotal  $ 28,938.30
Interest expense Schedule A
$ 7,548.00
Personal living expense by cash
7,600.00
Federal tax paid
1,031.00
Blue Cross payments
4,558.28
Total  $ 49,675.58
Petitioners do not dispute these amounts or their characterization as personal living expenses, except with respect to the amounts shown for personal living expenses by cash and Blue Cross payments which petitioners maintain is $ 2,284.19. Petitioners' Federal income tax return for the taxable year 1984 was prepared by the Pac Asset Management, Inc., return preparation firm of Denver, Colorado. Nicholas G. Michas and Elwin Rich, petitioners' bookkeeper, submitted records, workpapers, and *176 oral statements to Carl Kirk of Pac Asset Management, Inc., for the preparation of the 1984 return. Pac Asset Management, Inc., did not maintain petitioners' books and records. OPINION As a preliminary matter, we address petitioners' argument that respondent's determination is in error and lacks rational basis and, therefore, is not entitled to the presumption of correctness. Respondent determined petitioners' unreported income based on the sum of petitioners' increase in net worth and personal expenditures during 1984 as revealed by respondent's investigation. The United States Supreme Court has sanctioned the use of the net worth method to establish unreported taxable income. See Holland v. United States, 348 U.S. 121 (1954). See also Licari v. Commissioner, T.C. Memo. 1990-4, affd. 946 F.2d 690 (9th Cir. 1991); Beyer v. Commissioner, T.C. Memo. 1988-261, affd. without published opinion 914 F.2d 261 (9th Cir. 1990); Hamilton v. Commissioner, T.C. Memo. 1987-278; Roberts v. Commissioner, T.C. Memo. 1987-182. The specific numbers that respondent *177 used in her analysis, for the most part, accurately reflect petitioners' opening and closing net worth for 1984 and their personal expenditures during 1984. Indeed, petitioners stipulate that the vast majority of these figures are correct, and many of the figures that remain in dispute are resolved in petitioners' favor. As more fully explained later, we also believe that respondent's determination of petitioners' beginning net worth was reasonable and that petitioners' business activities provided a likely source for the determined increase in net worth and personal expenditures. In light of this, we find that respondent's determination is entitled to the presumption of correctness. [3] Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The first *178 issue for decision is whether petitioners had unreported taxable income for the year 1984. Petitioners present two basic arguments with respect to respondent's determination of unreported taxable income. First, petitioners assert that respondent should not have used the net worth plus expenditures method to determine their income. Petitioners make two subarguments in support of this position. They argue that they maintained complete books and records and therefore computing income based on an indirect method is not authorized, and that if an indirect method is authorized, the percentage mark-up method should be used because, according to petitioners, it more clearly reflects income. Second, petitioners argue that respondent improperly applied the net worth plus expenditures method. Specifically, petitioners argue that respondent erred in determining petitioners' opening and closing net worth, failed to consider nontaxable sources of income and a hoard of cash and gold coins allegedly accumulated by petitioners prior to the year in issue, and overestimated petitioners' personal expenditures during the year in issue. Propriety of Use of Net Worth Plus Expenditures Method
*179 Petitioners argue that respondent's use of the net worth plus expenditures method is improper because they maintained a complete set of books and records. Petitioners reason that, because their books and records correspond with the information reported on their tax return, we must accept them as clearly reflecting their taxable income. We disagree. Respondent's agent testified that although petitioners' income tax return reflected the information contained in their books and records, she did not think they accurately reflected income. Respondent's agent believed that petitioners' books and records were inadequate because they did not accurately reflect gross receipts and cost of goods sold. Specifically, gross receipts as reported by petitioners were not substantiated by the internal tapes from the stores' cash registers. Instead, petitioners' reported gross receipts were based on daily sales summaries which they made on a calculator. With respect to cost of goods sold, respondent's agent was unable to obtain a complete record of petitioners' purchases during the year. Respondent had previously audited petitioners for 1983 and determined that their books and records for that *180 year did not accurately reflect taxable income. Under these circumstances, it was reasonable for respondent to test the adequacy of petitioners' books and records by reconstructing their income based on net worth increases and personal expenditures. Even if petitioners' books and records appear perfectly adequate, respondent may test the adequacy of the information contained therein by any reasonable method which, in respondent's judgment, properly reflects petitioners' taxable income. See Holland v. United States, supra at 131-132; Lipsitz v. Commissioner, 21 T.C. 917, 931 (1954), affd. 220 F.2d 871 (4th Cir. 1955). Indeed, in this case, respondent's reconstruction provides cogent evidence that petitioners' books and records are unreliable and do not accurately reflect income. Courtney v. Commissioner, 28 T.C. 658, 665 (1957); Estate of Bartlett v. Commissioner, 22 T.C. 1228, 1230 (1954); Lipsitz v. Commissioner, supra at 931. Petitioners cite Bechelli v. Hofferbert, 111 F. Supp. 631 (D. Md. 1953), for the proposition that their books *181 and records are, as a matter of law, adequate. Although the taxpayer in Bechelli maintained his books and records in a manner similar to petitioners, Bechelli does not stand for the proposition that books and records kept in that manner are, as a matter of law, adequate. A reading of Bechelli reveals that the court based its decision on its finding that the taxpayer's witnesses were credible, and the evidence in the record did not suggest that the books and records did not clearly reflect income. The court stated: The critical test as to the sufficiency of the books on their face is whether they are sufficient to calculate the net income. * * * There is no prescribed detail as to just what books or how many must be kept. The question in each case must be determined on its particular facts and in view of the nature, volume and complexity of the business. * * * Of course the books on their face are not conclusive of the proper figures and their inaccuracy, whether by inadvertence or fraud, can be shown by other evidence. In this case there is no such other evidence; nor is there any evidence even of reasonable suspicion as to the fairness and accuracy of the *182 books as kept. [Bechelli v. Hofferbert, supra at 633.]
Petitioners also argue that if respondent is authorized to use an indirect method, she should use the percentage-cost-mark-up method because, according to petitioners, that method confirms the accuracy of petitioners' return and is a better reflection of income. Section 446 confers broad powers on the Secretary or his delegate, the Internal Revenue Service, to recompute the taxable income of a taxpayer when the taxpayer's method of accounting does not clearly reflect income. The recomputation of taxable income "shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b). Consistent with the broad power to compute taxable income, section 6212(a) provides for the issuance of a notice of deficiency where the Secretary "determines that there is a deficiency" in respect of certain taxes. Nowhere in the Code is there a provision which specifies the nature and quality of the evidence which the tax administrator must gather to support the determination or the form and contents of the notice. Mayerson v. Commissioner, 47 T.C. 340, 348 (1966). *183 [4]
The absence of statutory guidelines suggests that Congress intended respondent to have great latitude in making determinations of liability, particularly where the taxpayer refuses to cooperate in the ascertainment of his income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Thus, respondent is entitled to use any reasonable means of reconstructing income, and we will not require her to use one method as opposed to another.[5] See Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); Meier v. Commissioner, 91 T.C. 273, 297 (1988). *184 Propriety of Application of Net Worth Plus Expenditures Method
Under respondent's net worth plus expenditures method, taxable income is computed by determining the excess of petitioners' assets at cost, less liabilities, at the end of the tax year over the assets at cost, less liabilities, at the beginning of the year. The difference between these two figures represents the increase (or decrease) in petitioners' net worth. This difference is then adjusted by adding nondeductible expenditures, such as living expenses, and by subtracting nontaxable sources of income, such as gifts, inheritances, loans, and the like. See Holland v. United States, supra; United States v. Giacalone, 574 F.2d 328, 330 (6th Cir. 1978). The adjusted increase in petitioners' net worth, if any, is considered attributable to taxable income. Holland v. United States, supra.Petitioners argue that respondent's determination under the net worth plus expenditures method is erroneous because it lacks a firm starting point, improperly determines expenditures during the year, fails to consider alleged nontaxable sources of income during *185 the year, and improperly computes petitioners' closing net worth. Before proceeding to an analysis of the specific issues involved herein, we note that petitioners attempt to undermine respondent's net worth computation by pointing to a number of discrepancies between respondent's original deficiency notice and her position at trial. Many of these discrepancies are, to a large extent, attributable to the inadequacy of petitioners' records and their failure to cooperate with respondent's agent. Specifically, petitioners, upon advice of counsel, refused to submit to interviews by respondent after March of 1987, failed to reveal the identity of bank accounts, and provided a questionable account of their personal expenditures. When this is considered in conjunction with the fact that most of the assets and liabilities which comprise petitioners' net worth were ultimately stipulated by the parties, and we resolve many of the remaining "discrepancies" in petitioners' favor, we are satisfied that respondent's computations are sufficient to allow us to proceed to decision in the normal fashion. See Logan v. Commissioner, T.C. Memo. 1976-143, affd. 595 F.2d 365 (6th Cir. 1979). *186 Respondent determined that petitioners' opening net worth was $ 716,672.92. This figure is based on respondent's determination of the cost basis of petitioners' assets as of the end of 1983 ($ 878,861.74), reduced by the value of petitioners' liabilities as of the end of 1983 ($ 162,188.82). With respect to respondent's valuation of total assets, the parties stipulate that petitioners owned assets valued at $ 779,729.41. Petitioners offered no evidence nor did they otherwise dispute an additional $ 14,772.54 [6] of respondent's asset determination. Thus, $ 794,501.95 in assets held at the beginning of the year does not appear to be in dispute. A dispute with respect to assets listed in respondent's computation arises with respect to the opening balance of five of petitioners' accounts. *187 The first account is IntraWest Bank of Northglenn number XXX-0227. The parties stipulate that the opening balance in this account is either $ 5,099.08 or $ 12,801.66. On brief, respondent takes the position that this figure is $ 12,801.66. As this position is favorable to petitioners, [7] we adopt it for purposes of our opinion. The second account is Merrill Lynch account number XXX-X6666. Respondent determined that the opening balance of this account was $ 61,817.15. The parties stipulate that the opening balance in this account is either $ 61,817.15 or $ 50,000. As the $ 50,000 is not contained in the original statutory notice of deficiency, and this figure works to petitioners' disadvantage, we treat it as a new matter on which respondent bears the burden of proof. Rule 142. Respondent has failed to meet this burden. Accordingly, we *188 find that the opening balance of this account is $ 61,817.15. The third account is the Dreyfus Fund account number XXXXXXXX988-7. For purposes of the 1983 statutory notice of deficiency, respondent determined that petitioners were the sole owners of the fund and its closing balance was $ 31,048.46. After issuing a notice of deficiency for 1983, but before issuing the notice of deficiency for 1984, respondent determined that Jim Michas also owned an interest in this account. Respondent tried to determine the percentage interests of petitioners' and Jim Michas' interests in the account, but the parties would not provide respondent's agent with this information. Consequently, for purposes of the 1984 statutory notice of deficiency, respondent attributed one-half of the closing 1983 balance, or $ 15,524.23, to petitioners. The parties stipulate that the opening balance in this account is either $ 15,524.23, $ 16,124.23, or $ 31,048.46. The testimony of respondent's agent is consistent with respondent's determination that the opening balance of this account was $ 15,524.23, and petitioners failed to present sufficient evidence to prove that this aspect of respondent's determination *189 was incorrect. Accordingly, we uphold respondent's determination with respect to this account. The fourth account is the United Bank of Littleton account number XX-X7825. For purposes of the 1983 statutory notice of deficiency, respondent determined that the closing balance of this account was $ 1,481.61, but for purposes of the 1984 statutory notice of deficiency, respondent determined that the opening balance was $ 1,374.61. The parties stipulate that the 1984 opening balance was either $ 1,481.61 or $ 1,374.61. Petitioners did not present sufficient evidence to refute respondent's determination that the opening balance was $ 1,374.61, and so we find that it was. [8]
*190 The fifth account is the Janus Fund, Inc., account number XXXXX805-4. For purposes of the 1983 statutory notice of deficiency, respondent determined that the closing balance of this account was $ 10,767.07, but for purposes of the 1984 statutory notice of deficiency, respondent determined that the opening balance was $ 10,000. The parties do not stipulate the 1984 opening balance in this account. Petitioners did not present sufficient evidence to refute respondent's determination that the opening balance was $ 10,000, and so we find that it was. After resolving the five figures which are disputed by the parties, we find that the opening balance of petitioners' assets is $ 896,019.60. Of the $ 162,188.82 in liabilities, which respondent offset against petitioners' opening assets, the parties stipulate all but $ 424 which is identified as "depreciation" in the notice of deficiency. Respondent's brief eliminates this item from her opening net worth computation. Since this favors petitioners, we find that petitioners' liabilities as of the beginning of 1984 should not include $ 424 of "depreciation". Petitioners' liabilities at the beginning of 1984 total $ 161,764.82. Based *191 on these figures, we find that petitioners' opening net worth was $ 734,254.78. Respondent determined that petitioners' closing net worth was $ 802,634.40. This figure is based on respondent's determination of the year-end-cost value of petitioners' assets ($ 931,808.34), reduced by the year-end amount of petitioners' liabilities ($ 129,173.94). With respect to respondent's year-end determination of petitioners' assets, the parties stipulate that petitioners owned assets having a cost basis of $ 873,233.86. Petitioners offered no evidence nor did they otherwise dispute an additional $ 15,579.36 [9] of respondent's asset determination. Thus, $ 888,813.22 in assets held at the end of the year does not appear to be in dispute. The dispute arises with respect to the closing balance of four of petitioners' accounts. *192 The opening balances of two of these accounts, the Dreyfus Fund and the Janus Fund, Inc., were also in dispute. Respondent determined that the closing balances of these accounts were $ 10,457.87 and $ 10,897.47, respectively. We uphold respondent's determination of the closing balances of these accounts for the same reason that we upheld her determination of the opening balances. The third account is really a group of accounts which petitioners maintained with Charles Schwab. Respondent determined that the collective value of these accounts was $ 34,437.94 at the end of 1984, and the parties stipulate the collective value was either $ 34,437.94 or $ 30,145.19. Petitioners failed to prove respondent's original determination was incorrect. Accordingly, we find the collective value of these accounts at the end of 1984 was $ 34,437.94. The fourth account is IntraWest Bank of Northglenn account number XXX-0227. The opening balance of this account was also in dispute. The parties stipulate the opening and closing balances in this account were either $ 5,099.08 and ($ 3,841.51) or $ 12,801.66 and $ 1,794.06, respectively. On brief, respondent takes the position that the opening *193 and closing balances were $ 12,801.66 and $ 1,794.06, respectively. As opposed to opening and closing balances of $ 5,099.08 and ($ 3,841.51), this position is favorable to petitioners. [10] Accordingly, we adopt it for purposes of our opinion. After resolving the four closing balances which are disputed by the parties, we find that the closing value of petitioners' assets was $ 946,400.56. Of the $ 129,173.94 of closing liabilities which respondent determined, the parties stipulate to $ 103,520.94, leaving $ 25,653 in issue. One hundred ninety-six dollars of this $ 25,653 is attributable to an item identified as "depreciation". Petitioners offered no evidence nor did they otherwise dispute this amount. Thus, we find that respondent properly determined petitioners' closing net worth should be offset by $ 196 in "depreciation". *194 The remaining $ 25,457 in dispute is based on respondent's determination of the closing balance of a note payable by Empire Liquors to Jim Michas. The parties agree that the opening balance on this note was $ 5,000. Respondent originally determined that the closing balance was $ 25,457, but she now claims that the closing balance is $ 12,457. [11] Respondent presented evidence which indicates that a check in the amount of $ 13,000 drawn on the Dreyfus Fund account was deposited into Empire Liquors' account and that this transaction was characterized as "added capital by Jean". Respondent apparently contends that this $ 13,000 somehow further decreased the balance on the note payable to Jim Michas. Respondent failed to prove this. Accordingly, we find that the ending balance on the note payable was $ 25,457 and that the ending balance for all petitioners' liabilities was $ 129,173.94. Based on these figures, petitioners' net worth at the end of 1984 was $ 817,226.62 and petitioners' net increase in net worth during 1984 was $ 82,971.78. *195 Respondent adjusted the increase in net worth to reflect petitioners' nondeductible personal expenditures. Respondent determined that petitioners expended $ 49,675.58 on nondeductible personal expenses in 1984. Petitioners stipulate $ 39,801.49 of this amount. More specifically, petitioners stipulate that all respondent's determination of personal expenditures are correct except her determination that their personal living expenses paid by cash was $ 7,600 and that their Blue Cross payments were $ 4,558.28. Petitioners contend that the combined amount of these expenditures was $ 2,284.19. Petitioners failed to prove this claim. Respondent introduced into evidence a letter from petitioners' agent in which he states that petitioners' cash expenditures for personal living expenses in 1982 and 1983 were approximately $ 7,600 per year. In light of this, we uphold respondent's determination that petitioners made $ 49,675.58 in nondeductible personal expenditures in 1984. Petitioners make several arguments with respect to respondent's determination of petitioners' taxable income. Petitioners argue that the opening net worth does not reflect a cash hoard of $ 40,000 to $ 50,000 *196 and precious metals which petitioners claim they had in their possession at the beginning of 1984; that respondent failed to consider gifts which petitioners allegedly received in 1984; and that respondent failed to consider loan repayments which they allegedly received in 1983. Petitioners also argue that respondent's determination does not reflect losses from the sale of precious metals which allegedly occurred in 1984. We are not persuaded by any of these arguments. [12]
With respect to petitioners' claim that they had a cash hoard, they bear the burden of proof. Rule 142(a). *197 When respondent's agent first asked petitioners about any cash on hand, they claimed they did not have any. Petitioner Nicholas G. Michas testified that he gave this response because he did not think cash-on-hand was any business of respondent's agent and because they had been burglarized in the past and did not want to disclose that they maintained a cash hoard in their basement. We do not find this explanation plausible. [13] In any event, petitioner Nicholas G. Michas testified that the amount of the cash hoard changed very little, if any, during 1984. Thus, consideration of it would have little, if any, impact on respondent's analysis. [1]4 *198 We also reject petitioners' argument that part of their increase in net worth is attributable to the sale of precious metals which they acquired in prior years and sold at a loss during 1984. Mr. Michas testified that between 1959 and the mid-to-late 1970s, he purchased gold coins. Petitioners claim that they sold some of these coins in 1984 at a loss and, therefore, had a nontaxable source of funds. Petitioners claim that they used the proceeds of the sales to pay bills and other living expenses. Other than the testimony of Mr. Michas, petitioners presented no evidence documenting these alleged sales. Indeed, Mr. Michas testified that he did not report the alleged loss on the sale of the coins on his 1984 tax return because he lacked sufficient records to substantiate the claim. Given the lack of evidence with respect to this claim, we are unable to find that part of petitioners' increase in net worth is attributable to the sale of gold coins. We also reject petitioners' argument that respondent erred by failing to consider the receipt of loan repayments which allegedly occurred during 1983. Because these transactions allegedly occurred in 1983, they affect petitioners' *199 net worth in 1983, not 1984. Their impact on petitioners' 1984 net worth should already be reflected in the opening net worth as agreed to by the parties, or as otherwise decided by this Court. Thus, even if we accept the facts surrounding these transactions, as testified to by Mr. Michas, we would not find that respondent erred in her determination. We also reject petitioners' claim that respondent erred when she failed to consider gifts which petitioners allegedly received from Jean Michas' father in 1984. Nicholas G. Michas testified that over the years his father-in-law established a gifting program under which he made gifts to petitioners and their children. He testified that in 1984, he and his wife each received gifts of $ 9,000, apparently pursuant to this program. Petitioners presented no documents evidencing these alleged transactions and did not call any witnesses to corroborate their claim. Given the lack of corroborating evidence and our observation that Mr. Michas' testimony was at times implausible and inconsistent, we find that petitioners failed to prove that respondent erred by failing to consider the receipt of gifts from Jean Michas' father in her 1984 determination. *200 After reviewing the entire record, we find that the increase in petitioners' 1984 net worth was $ 82,971.78, [15] and petitioners expended $ 49,675.58 on nondeductible personal expenditures during that year. The next issues for decision are: (1) Whether petitioners had income subject to the tax on self-employment income equal to or in excess of the $ 37,800 maximum subject to the self-employment tax for 1984; (2) whether petitioners are subject in 1984 to the section 4973 6-percent excise tax for excess contributions to individual retirement accounts; (3) whether petitioners are liable for the addition to tax for negligence or intentional disregard of the rules and regulations pursuant to section 6653(a)(1) and (2) for the taxable year 1984; and (4) whether petitioners are liable for the addition to tax for substantial understatement of income tax liability pursuant to section 6661 for the taxable year 1984. Petitioners *201 bear the burden of proof on all these issues. Rule 142(a). Except for their challenge to respondent's net worth and expenditures computation of income, petitioners failed to address the first issue at trial or on brief. Accordingly, we hold for respondent on this issue. See Burbage v. Commissioner, 82 T.C. 546, 547 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Ideal Basic Industries, Inc. v. Commissioner, 82 T.C. 352, 366 (1984); Rockwell International Corp. v. Commissioner, 77 T.C. 780, 837 (1981), affd. 694 F.2d 60 (3d Cir. 1982). Similarly, petitioners failed to address the second issue at trial or on brief. Petitioners' only argument with respect to the last two issues is that these additions to tax should not be imposed because there is no deficiency owing. Because we find that a deficiency does exist, and because petitioners have failed to prove that these additions to tax do not otherwise apply, we also hold for respondent on these issues. Petitioners raise several other issues in their petition. These issues appear to flow from computational adjustments made by respondent as *202 a result of her determination that petitioners had underreported taxable income. In their petition, petitioners appeared to disagree with these adjustments solely because they disagree with respondent's determination that they underreported income. Petitioners make no argument on brief with respect to these adjustments; therefore, to the extent petitioners may have initially intended to challenge the substantive propriety of these adjustments, we deem petitioners to have abandoned these issues. To the extent these issues are computational, the parties shall resolve them in the Rule 155 computation which we direct in accordance with our opinion today. Decision will be entered under Rule 155. APPENDIX Year Ending
Year Ending
Assets
12/31/83
12/31/84
Empire Liquor:
Equipment  $ 16,275.00  $ 16,275.00   Equipment  937.00 937.00 Empire Liquor:
Inventory  159,905.61 153,034.85 Empire Liquor:
Cash  100.00 100.00 Empire Liquor:
Back-Up Change  400.00 400.00 Frontier:
Equipment  24,383.00 24,383.00 Frontier:
Inventory  161,813.00 181,179.00 Frontier:
Cash  100.00 100.00 Frontier:
Back-Up Change  300.00 300.00 Account
Year Ending
Year Ending
Accounts
Number
12/31/83
12/31/84
Schedule E
$ 1,317.00   $ (17,993.42)
Capital Gain Distribution on Sch. E
0.00 n1 2,513.00 Engler Budd Company
0.00 6,381.06 M Merchandising
0.00 27,500.00 Hutton Con Am #2
10,000.00 10,000.00 IntraWest Bank
of Bear Valley  XXX-374-3
[1] 8,311.80 n1 1,301.38 United Bank of
Littleton  XX-X7825
1,374.61 849.73 IntraWest Bank of
Northglenn  XX-0227
[1] 12,801.66 n1 1,794.06 Stock Held Prior to 1984  1,547.00 1,547.00 Stock Held Prior to 1984  7,606.00 7,606.00 IntraWest of
Bear Valley  XXX0-995
557.84 1,335.06 First Interstate
Bk of Denver  XXX4634
1,921.46 823.31 Colorado National
Bank -- Arapa  XX0-270
2,602.57 45,039.09 Colorado National
Bank-DTC  XX2-195
1,647.06 626.11 Dreyfus Fund  XXXXXXXX988-7
15,524.23 10,457.87 Colorado National
Bank-TC  XXX2045
612.51 1,419.33 Capital Preservation
Fund  XXX3508
45,521.71 49,897.31 Founders Money Market
XXXXX565-9
5,361.42 5,889.52 Financial Program
XXX94-0-25
39,707.88 43,875.45 Fidelity
XXXXX4927
40,797.84 44,954.10 Merrill Lynch
XXX-X6666
61,817.15 n1 31,394.46 Partnerships
XXX-X2121
30,729.49 30,729.49 Boettcher & Company
XX-X4561
10,000.00 22,823.73 Charles Schwab
Cash XXXX6113
2,771.66 0.00 Charles Schwab
Margin
28,429.59 23,005.19 Charles Schwab
815.00 11,432.75 Merrill Lynch,
Pierce, Fenner  XXX-X9087
12,840.00 7,912.00 Cash
18.42 0.45 Stock
0.00 5,908.29 Janus Fund, Inc.
XXXXX805-4
10,000.00 10,897.47 T. Rowe Price
Trust Co.  XXXXX2527
8,760.17 11,766.77 T. Rowe Price
Trust Co.  XXXX2521
8,760.17 11,766.77 First Interstate
Bk of Denver  XXX2129
12,721.79 0.00 XXX2111
10,678.95 0.00 XX-X8005
0.00 15,752.78 XX-X7934
0.00 18,766.23 Howard S. Smith Lot
[2] 599.90 n2 599.90 Ross Stebbins,Inc.
[2] 3,542.60 n2 3,542.60 Federal Refund held
By IRS  5,000.00 5,000.00 Devine Mfg/S Corp.
12,500.00 12,500.00 CAPITAL ACCOUNTS:
Niko capital account  73,493.32 49,266.65 Michas Brothers  41,108.16 50,534.72 capital gain  7.03 7.03 TOTAL ASSETS
$ 896,019.60 $ 946,400.56 LIABILITIES
IntraWest Bank of
Bear Valley  (20,000.00)
0.00 United Bank of
Littleton  X-XX2914
(18,000.00)
(21,000.00)
First Interstate
Bank of Denv.  XXXXXXXXXXXX9224
(16,198.34)
(21,269.55)
A/P Frontier Liquors
(34,150.68)
(21,122.21)
A/P Empire Liquors
(68,415.80)
(40,129.18)
Depreciation
[1] (00)
(196.00)
N/P Empire
(5,000.00)
(25,457.00)
NET WORTH BALANCE
$ 734,254.78 $ 817,226.62  PRIOR YEAR NET WORTH
$ (734,254.84)
INCREASE IN NET WORTH
$ 82,971.78   *203 Footnotes
1. Petitioners make no argument that ownership of the funds in these accounts is attributable to anyone other than themselves. We note that the sum of these numbers is $ 17,727.45. However, the parties stipulated $ 17,724.95, and we use this figure for purposes of our opinion.
[2]↩ The alternative figures in our findings of fact, as contained in this and the following schedule, are based on the parties' stipulation. The parties, for the most part, agree on the figures which form the basis of respondent's determination. However, in a few instances, the parties disagree. In these instances, the parties stipulate that the correct figure is one of several alternatives. Our findings of fact reflect these disagreements and indicate the alternatives presented by the parties. Our opinion resolves the disagreements and decides which of the alternatives presented by the parties is appropriate.
1. This entry is identified in respondent's statutory notice of deficiency as "cash". The parties do not explain why this asset is identified as "stock" in their stipulation.↩
3. See Votsis v. Commissioner, T.C. Memo. 1988-70; Thomas v. Commissioner, T.C. Memo. 1984-72; Mazzoni v. Commissioner, T.C. Memo. 1970-37, affd. 451 F.2d 197↩ (3d Cir. 1971).
4. We note that the net worth plus expenditures method is not an accounting system but rather, when properly applied, is evidence of income. Holland v. United States, 348 U.S. 121, 131, 138 (1954); Lipsitz v. Commissioner, 21 T.C. 917, 931 (1954), affd. 220 F.2d 871↩ (4th Cir. 1955).
5. We are not convinced that the percentage markup method contradicts respondent's determination. Petitioners' position is that the information in their return is consistent with the percentage markup of inventory used by liquor stores both in the area and nationwide. Respondent's position appears to be that petitioners purchased and sold inventory off the books. If respondent is correct (as his net worth analysis indicates), then petitioners' return does not reflect all the transactions for the year, and a percentage markup analysis based only on the sale of goods reflected on the return will not include all income-generating transactions.↩
6. This amount consists of $ 9,153 in stock held prior to 1984, $ 612.51 held in Colorado National Bank account number XXX2045, $ 5,000 Federal tax refund held by respondent, and $ 7.03 identified as "capital gain". The total increase in net worth during 1984 attributable to these items is $ 806.82. National Bank account number XXX2045, $ 5,000 Federal tax refund held by respondent, and $ 7.03 identified as "capital gain". The total increase in net worth during 1984 attributable to these items is $ 806.82.↩
7. This position is favorable to petitioners because it increases their opening net worth and thereby decreases the overall increase in net worth during the year in issue.↩
8. We note that, arguably, respondent takes inconsistent positions with respect to the opening balances on some of these accounts by virtue of the fact that she assigned different values to these accounts for purposes of determining their closing balance for his 1983 net worth computation. Respondent's agent testified that this discrepancy is attributable to the discovery of information after the 1983 notice of deficiency was issued and which was used in respondent's 1984 determination. Nineteen hundred eighty-three is not in issue, and we pass no judgment on the accuracy of the figures contained in respondent's determination for that year. However, we do find respondent's explanation of the discrepancy plausible; and consequently, we do not believe these discrepancies cast doubt on respondent's determination. Moreover, as noted, it appears that many of these discrepancies result from petitioners' failure to cooperate with respondent's investigation. We do not think petitioners should benefit from their failure to cooperate.↩
9. This amount comes from the same sources discussed supra↩ note 8. The only difference is that the amount held in Colorado National Bank account number 4102045 increased to $ 1,419.33 during 1984.
10. This position is favorable to petitioners because it results in a net decrease in net worth of $ 11,007.60 as opposed to a decrease of $ 8,940.89 which would result if the other figures were used.↩
11. Because this new figure decreases petitioners' ending liabilities and increases the overall increase in net worth for 1984, we treat this new figure as a new matter on which respondent bears the burden of proof. Rule 142.↩
12. Petitioners also seem to argue that respondent failed to prove a likely source of income. The evidence indicates that petitioners owned three businesses and maintained other investments. Based on this evidence, we find that there existed a taxable source from which the net worth increase sprang. Holland v. United States, 348 U.S. at 138; United States v. Greene, 698 F.2d 1364, 1373↩ (9th Cir. 1983).
13. Petitioners argue that because respondent did not call witnesses to contradict Mr. Michas' testimony, we are bound to accept it as it is uncontroverted. Clearly, we are not obligated to accept every word of testimony at face value; it is within our province to determine the extent to which testimony is believable. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Estate of Mercure v. Commissioner, 448 F.2d 922, 923 (6th Cir. 1971), affg. T.C. Memo. 1969-206, supplemented by T.C. Memo. 1970-166; Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo. 1967-85; Dougherty v. Commissioner, 60 T.C. 917, 932-933 (1973). Indicates a number which is different from the number used in the statutory notice of deficiency. [1]4 Courts have held that where there is evidence to support a finding that no significant cash hoard existed, but that the taxpayer maintained some constant but indeterminable amount of cash, respondent may properly choose not to include cash-on-hand in the net worth computation. United States v. Giacalone, 574 F.2d 328, 333 (6th Cir. 1978); Roberts v. Commissioner, T.C. Memo. 1987-182. This is because the net worth method determines income based on the change in a taxpayer's net worth during a relevant period. If a constant amount of cash is excluded at the beginning and end of the period, the exclusion has no effect on the amount of income determined by the net worth computation. United States v. Giacalone, supra↩ at 333.
15. Attached as the appendix is a revised net worth analysis of petitioners' assets and liabilities.↩
2. Indicates an asset which was not reflected in the statutory notice of deficiency.↩